**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DECORA A. SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 05-0429-WS-C** |
| | ) | |
| **WEST FACILITIES CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on plaintiff Decora A. Smith's Corrected Motion to Amend the Pleadings (doc. 34). The Motion has been briefed and is ripe for disposition.

**I.    Background.**

This employment action, originally filed in the Circuit Court of Mobile County, Alabama, was removed to this District Court on July 22, 2005. The only defendant named in the Complaint is "West Facilities Corporation a/k/a West Telemarking Corporation" (hereinafter, "West Facilities"). As amended by Smith on July 26, 2005, the Complaint alleges exclusively state law causes of action against West Facilities, including claims for breach of employment contract, breach of operations manual, promissory estoppel, fraudulent promissory estoppel, emotional distress and negligence. (*See* doc. 6.) On August 8, 2005, West Facilities filed an Answer (doc. 12), which included as its Ninth Defense the following statement: "The Amended Complaint fails to state a claim against West Facilities Corporation because plaintiff was never employed by West Facilities Corporation and that corporation is therefore not the proper defendant in this lawsuit." (Answer, at 15.) West Facilities also initiated counterclaims against Smith, alleging claims of fraud, breach of contract, and recovery of attorney's fees associated with removal of this action to federal court.[1]

---

[1]    The counterclaims included allegations that Smith worked for, and was compensated by, West Facilities. For example, West Facilities alleged that "Defendant paid compensation to Plaintiff and continued his employment," that plaintiff "accepted monies from Defendant," and that "Plaintiff accepted good and valuable consideration from Defendant in the

On numerous occasions beginning early in these proceedings, West Facilities placed Smith on notice that it was not the proper defendant and traced the labyrinthine, but still readily identifiable, corporate lineage of the West entities that actually had employed Smith.  For example, on August 5, 2005, West Facilities filed an Amendment to Notice of Removal (doc. 9) bluntly apprising plaintiff that "West Facilities Corporation was not plaintiff Decora Smith's employer."  (Amendment to Notice of Removal, ¶ 2.)  Defendant went on to explain as follows:

> "At relevant times, Smith was employed by West Telemarketing Corporation Outbound ....  Thereafter, the form of the entity was changed and the entity currently is West Business Services, LP, a Delaware limited partnership ....  The general partner of West Business Services, LP, is West Transaction Services, LLC ...  The limited partner is West Transaction Services II, LLC ...."

(*Id.*)  In a Response to Order to Show Cause (doc. 10) filed the same day, West Facilities indicated that "Smith has incorrectly named West Facilities Corporation as his employer," that Smith "was never employed by" West Facilities, and that Smith's "true employer" was "West Telemarketing Corporation Outbound (now West Business Services, LP)."  (*Id.* at 4 & n.3.)[2] Just over a month later, on September 16, 2005, the parties submitted a Report of Parties' Planning Meeting (doc. 18), wherein defendant reiterated its position that "it is not the proper Defendant in this case as it was not Plaintiff's employer."  (*Id.* at 3.)[3]

Despite these unambiguous revelations by West Facilities at the inception of this litigation that Smith had named the wrong entity, and the clear roadmap supplied to him for correcting that defect, Smith did not seek to amend the Amended Complaint in August or September of 2005.  Nor did Smith utilize the discovery process to explore the veracity of West Facilities' representations as to which West entity actually employed him.

---

form of a relocation package."  (Answer, at 15-16.)

[2]     The August 5 Response was accompanied by the Affidavit of Frank Schilling, plaintiff's former supervisor.  Schilling averred that "Mr. Smith was never an employee of West Facilities Corporation," and specifically identified West Telemarketing Corporation Outbound; West Business Services, LP; West Transaction Services, LLC; and West Transaction Services II, LLC as plaintiff's employer.  (*Id.*, ¶¶ 2-3.)

[3]     These representations were further cemented by similar recitals in discovery responses that West Facilities served on Smith on February 10, 2006.

On December 13, 2005, Magistrate Judge Cassady entered a Rule 16(b) Scheduling Order (doc. 23) providing that motions for leave to amend pleadings and to join other parties must be filed by January 31, 2006.  Smith did not object to this setting, which actually afforded him an additional six weeks beyond the jointly proposed deadline listed in the Report of Parties' Planning Meeting.  Yet Smith made no attempt to name different or additional parties defendant until March 8 and 11, 2006, when he submitted two separate (albeit procedurally defective) requests for leave to substitute West Corporation, West Telemarking LP, West Business Services LP, West Transaction Services LLC, and West Transaction Services II LLC for the named defendant in this action.[4]  (*See* docs. 29, 30.)  On March 13, 2006, Smith again sought leave to amend his Complaint to include the other five West entities as named defendants, in lieu of West Facilities.  That request is now before the undersigned.

## II.   Analysis.

### A.   *Governing Legal Standard.*

Ordinarily, requests for leave to amend pleadings are viewed through the prism of Rule 15(a), Fed.R.Civ.P., which provides that leave shall be freely given when justice so requires. However, the critical procedural fact in this case is that Smith first lodged his request to name additional parties defendant on March 8, 2006, more than five weeks after expiration of the deadline prescribed by the Rule 16(b) Scheduling Order.  As such, the Court must scrutinize the Motion under Rule 16(b), which forbids modification of a scheduling order absent a showing of "good cause."  The Rule 16 hurdle must be surmounted antecedent to any Rule 15 analysis.  *See Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("because Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)");

---

[4]     As grounds for his March 11 request, Smith cited West Facilities' discovery responses from February 10, and asserted that until he received those responses, "there was no document of which Mr. Smith was aware, or any statement made by any party, which suggested that all five, or at least four of the five, entities may be a proper party defendant."  (Motion to Substitute Party Defendants (doc. 30), at 2-3.)  The record facts recited above expose this statement as inaccurate and misleading.  Even if it were correct, Smith offers no explanation for why he did not vigorously explore this issue during discovery by, for example, deposing Schilling or other West Facilities representatives to ascertain the proper party defendants.

*Alexander v. AOL Time Warner, Inc.*, 2005 WL 1182950, *1 (11th Cir. May 19, 2005) (when granting leave to amend a complaint "would require modifying a Rule 16 scheduling order, the movant must first show good cause").[5]   The deadlines set forth in Rule 16(b) scheduling orders are firm settings that must be taken seriously by both the Court and the litigants appearing before it.   To allow parties to circumvent long-expired deadlines merely by invoking the liberal leave to amend policy espoused by Rule 15(a) would be to "render scheduling orders meaningless and effectively ... read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."   *Sosa*, 133 F.3d at 1419.   The Court will not trivialize the Scheduling Order in such a manner.   Thus, extension of those deadlines is not automatic, and plaintiff's request is not a mere formality.

> **B.      Plaintiff's Demonstrated Lack of Diligence.**

Smith's late-filed proposed amendment is not permissible unless it comports with Rule 16(b)'s directive that modifications to a pretrial scheduling order may be made only "upon a showing of good cause."   *Id.*   Interpreting this standard, the Eleventh Circuit has explained that it "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension."   *Sosa*, 133 F.3d at 1418; *see also Argo Systems FZE v. Liberty Ins. PTE, Ltd.*, 2005 WL 1355060, *5-6 (S.D. Ala. June 7, 2005) (similar); *Williams v. Baldwin County Comm'n*, 203 F.R.D. 512, 516-17 (S.D. Ala. 2001) (denying extension where plaintiff's counsel was inattentive to scheduling order).   Simply put, the touchstone of the Rule 16(b) inquiry is whether Smith exercised diligence in attempting to comply with the Scheduling Order deadlines for amending pleadings and adding parties.   *See, e.g., Nobles v. Rural Community Ins. Services*, 303 F. Supp.2d 1279, 1284 (M.D. Ala. 2004) ("The court's focus in evaluating a motion to

---

[5]      *See also Morrison v. Exxonmobil Corp.*, 2006 WL 42142, *3 (M.D. Ga. Jan. 6, 2006) ("When a motion to amend is filed after a scheduling order deadline, as is the case here, Rule 16 is the proper guide for determining whether a party's delay may be excused."); *Richardson v. Georgia Pacific Corp.*, 2005 WL 1278833, *1 (S.D. Ala. May 26, 2005) ("A motion for leave to amend filed after the deadline for amending pleadings set forth in the scheduling order is governed by the stricter standard for amendment set forth in Rule 16(b) rather than the liberal amendment standard set out in Federal Rule of Civil Procedure 15(a)."); *Nobles v. Rural Community Ins. Services*, 303 F. Supp.2d 1279, 1283 (M.D. Ala. 2004) ("It is only after the court addresses whether the proposed amendment may be granted under Rule 16 that the court is to determine whether it is proper under Rule 15.").

amend under Rule 16 is on [the movant]'s diligence; that is, the court may grant the late-filed motion if the pretrial schedule could not reasonably have been met despite [the movant]'s diligence."). If the movant was not diligent, then "the court's inquiry should end." *Id.*; *see also Lord v. Fairway Elec. Corp.*, 223 F. Supp.2d 1270, 1277 (M.D. Fla. 2002) ("A finding of lack of diligence on the part of the party seeking modification ends the good cause inquiry, ... and the record in this case reveals a serious lack of diligence on the part of Plaintiff.").

In an effort to satisfy his burden, Smith proffers three arguments. First, he maintains that West Facilities has litigated this action in a manner inconsistent with its alleged status as a disinterested non-stakeholder. Second, Smith suggests that "[a]bsent discovery, it was unrealistic for Mr. Smith or his counsel to know who was ultimately responsible for his paycheck," and that he acted promptly upon receipt of such information. (Motion, at 4.) Third, Smith argues that the other West entities cannot be prejudiced by this technical amendment, and that denial of his request would "neither do justice nor further any legitimate ends." (Reply, at 3.) None of these contentions are persuasive.

Initially, Smith complains that West Facilities has hardly acted the part of a wrongly named defendant. In particular, Smith asserts, West Facilities has filed counterclaims, has vigorously litigated plaintiff's claims and its own counterclaims, has never moved to dismiss this action in either state or federal court, has responded to discovery requests, and has not objected that it lacks access to requested information because it was not Smith's employer. Accepting Smith's description of West Facilities' conduct in this litigation as correct, none of these facts show that Smith has been lulled, deceived or misled into believing that he had haled the proper defendant into court. West Facilities was under no obligation to move for dismissal at the earliest possible moment; to the contrary, defendant was entitled to make the strategic decision not to file a Rule 12(b) motion, but instead to bide its time and file a Rule 56 motion if the defect were not remedied. Nor was West Facilities compelled to ignore this litigation and disregard discovery requests in order to reinforce its point that it believed Smith had sued the wrong entity. At any rate, the fact remains that West Facilities promptly, unequivocally and repeatedly notified Smith in writing at the inception of this lawsuit that it was not Smith's employer, and advised him of the identities of (and the relationships among) the proper defendants. It was required to do nothing further to place Smith on notice of his need to investigate whether he had named the

right defendant.  Given the extensive information furnished by defendant, no reasonable plaintiff could have believed in August and September 2005 that there was no issue in this case as to whether the correct defendant had been sued.  Yet plaintiff failed to follow up for seven months.  Such a procedural history flies in the face of plaintiff's burden to show diligence.[6]

Nor does it suffice to argue, as Smith does, that "the design and full identity of West Corporation's corporate Empire was unknown to the Plaintiff" until he received responses to discovery.  (Reply, at 2.)  Before filing his initial Complaint on June 13, 2005, Smith may well have been in the dark as to which West entity or entities actually employed him.  But defendant quickly enlightened him.  Within two months after the Complaint was filed, West Facilities had traced out for Smith in writing (both in pleadings and in an affidavit from Smith's former boss) the name of the entity that employed him, its subsequent transmutation into a limited partnership entity with a different name, and the identities of the general and limited partners in that new entity.  Armed with such information in August 2005, there was no reason for Smith to wait with bated breath for the veiled secrets of West's corporate structure to be revealed in discovery.  West Facilities had already laid those facts bare for him.  This knowledge imparted on Smith the

---

[6]     In his reply brief, Smith places heavy weight on West Facilities' perplexing counterclaims, which allege an employer-employee relationship between plaintiff and defendant, and claim that West Facilities paid employment-related funds to Smith.  Defendant's counterclaims include, *inter alia*, statements that West Facilities "paid compensation to Plaintiff and continued his employment," that plaintiff "accepted monies from Defendant," and that West Facilities provided Smith with "a relocation package specifically providing funds for his moving expenses."  (Answer (doc. 12), at 15-16.)  If, as West Facilities so vehemently maintains, it was not the employing entity, then these factual allegations are blatantly groundless.  But this Court is not called upon at this time to pass on the merits of the counterclaims.  Nor is the Court now deciding whether West Facilities engaged in impropriety by knowingly pleading false statements.  Rather, the Court is now faced with the singular question of whether Smith acted diligently in amending his complaint.  Given defendant's repeated, detailed written statements advising Smith that it did not employ him and identifying those entities that did, the contrary allegations in the counterclaims may have produced some cognitive dissonance for plaintiff.  Under the circumstances, however, no reasonable plaintiff would have ignored the red flags and relied blindly on the counterclaims as the final word on the employment relationship.  At a minimum, a reasonably diligent plaintiff would have promptly undertaken discovery aimed at pinpointing the correct employing entity, and/or immediately filed a Rule 15 motion to name the other West entities as additional (not substitute) defendants on the strength of plaintiff's supervisor's sworn representations that those entities employed him.  Plaintiff did neither.

obligation either to amend his complaint promptly to name the proper defendants (whose identities he then knew) or diligently to conduct discovery aimed at confirming or refuting West Facilities' representations as to who the employing entities were.  He did not attempt to do the former option until March 2006, seven months after the fact.  And he never pursued the latter approach.[7]  Under the circumstances, it was inconsistent with the principles of diligence for Smith to sit on the information West Facilities had provided to him for seven months.[8]

Finally, Smith protests that none of the West entities will be prejudiced by his amendment and that the interests of justice require that the amendment be allowed.  Plaintiff is correct that the proposed new defendants appear unlikely to incur prejudice if they are joined now.  By all appearances, those putative defendants have been on notice of these proceedings from the outset and West Facilities has ably protected their interests.  But the Rule 16(b) inquiry does not turn on questions of prejudice.  The issue is the integrity of the court's scheduling orders and pretrial deadlines, not the risk of harm to opposing parties.  As for the interests of justice, the Court cannot agree that disallowing plaintiff's amendment "will neither do justice nor further any legitimate ends."  (Reply, at 3.)  To the contrary, the orderly, efficient passage of lawsuits through the federal courts demands that the Federal Rules of Civil Procedure be followed, that the parties adhere to Scheduling Orders, and that parties act diligently to safeguard

---

[7]    Plaintiff's interrogatories and requests for production, and defendant's responses to same, are appended to the court file as an exhibit to document 30.  Review of those requests shows that, over the span of 37 interrogatories and 19 requests for production, Smith never asked West Facilities to identify the entities that employed him, or to substantiate its representations from August 2005 regarding those entities.  Rather than waiting on responses to clue him in as to whether he had named the correct defendant, then, plaintiff instead submitted discovery requests that neglected that issue altogether.

[8]    Plaintiff's position is apparently that he could not move to amend the Complaint to name the other West entities as defendants until he received an organizational chart showing West's corporate structure on February 22, 2006.  (Motion, at 3-4.)  But plaintiff does not explain why the information in this chart was a prerequisite to his ability to seek an amendment.  He does not say why the information provided by defendant in August 2005, including his supervisor's affidavit, was inadequate in that regard.  He does not specify what new, relevant information he obtained via the organizational chart that he did not already have or could not have obtained with reasonable diligence prior to the January 31, 2006 Scheduling Order deadline.

their rights and advance their positions.  In light of the circumstances present here, allowing plaintiff's dilatory amendment would undermine each of these objectives, supplanting predictable procedural rules and rigorous scheduling deadlines with an ad hoc, chaotic "anything-goes" approach.  This the Court is not willing to do.[9]

**III.    Conclusion.**

For all of the foregoing reasons, plaintiff's Corrected Motion to Amend the Pleadings (doc. 34) is **denied** as untimely.

DONE and ORDERED this 5th day of April, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[9]      Nor is it accurate for plaintiff to characterize West Facilities' opposition to the proposed amendment as a "game of 'I got you.'" (Reply, at 3.)  There was no unfair surprise, trickery or sleight of hand here.  Virtually from day one of this litigation, the handwriting was on the wall, had plaintiff only stopped to read it.  Early on, defendant openly advertised the fact that the proper defendants had not been joined and announced its intent to rely on that omission as an affirmative defense.  Yet plaintiff failed to correct the problem, despite written notice of same, until well after the applicable deadline.